**AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, Plaintiff-Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY et al., Defendants-Appellees.**

No. 28952.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1971.

Malcolm A. Hoffman, Edward A. Woolley, New York City, Tom Watson Brown, Atlanta, Ga., S. E. Kelly, Jr., Kelly, Champion & Henson, Columbus, Ga., Huie & Harland, Atlanta, Ga., for plaintiff-appellant; Simon W. Selber, New York City, of counsel.

Paul Weiss, Goldberg, Rifkind, Wharton & Garrison, Jay H. Topkis, New York City, B. D. Murphy, Powell, Gold- stein, Frazer & Murphy, J. Winston Huff, Atlanta, Ga., for defendants-appellees; Sidney S. Rosdeitcher, Edward R. Korman, New York City, of counsel.

Before RIVES, GOLDBERG and MORGAN, Circuit Judges.

RIVES, Circuit Judge:

This appeal is from a decision denying the motion of plaintiff-appellant, American Family Life Assurance Company of Columbus, Georgia (AFL), for a permanent and temporary injunction against eight defendants-appellees.[1]

AFL contends that a provision uniformly adopted in defendants' group health insurance policies, the Coordination of Benefits (COB) provision, results in a boycott of AFL made illegal by Section 1 of the Sherman Act.[2] AFL further contends that it is entitled to injunctive relief,[3] notwithstanding the provisions of the McCarran-Ferguson Act.[4]

AFL is primarily engaged in the sale of dread disease (cancer) insurance on a franchise basis, *i. e.*, to employees whose employers pay the premiums deducted from the employees' wages. The de-

---

1. Aetna Life Insurance Co., Equitable Life Assurance Society of the United States, Gulf Life Insurance Co., John Hancock Mutual Life Insurance Co., Metropolitan Life Insurance Co., New York Life Insurance Co., Travelers Insurance Co., and Washington National Insurance Co.

2. Section 1 of the Sherman Act, 15 U.S.C. § 1 (1964), provides:

   "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *."

3. Section 16 of the Clayton Act, 15 U.S.C. § 26 (1964), provides:

   "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief * * * against threatened loss or damage by a violation of the antitrust laws * * * when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity * * *."

4. Section 2 of the McCarran-Ferguson Act, 15 U.S.C. § 1012 (1964), provides:

   "(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

   "(b) No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance * * * unless such Act specifically relates to the business of insurance: *Provided*, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act * * * shall be applicable to the business of insurance to the extent that such business is not regulated by State law."

   Section 3(b) of the McCarran-Ferguson Act, 15 U.S.C. § 1013(b) (1964), provides:

   "Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation."

fendants sell to employers for the coverage of their employees broad coverage medical care (health and accident) insurance, which includes the risk of cancer. The respective contentions on the merits were aptly stated by Judge Edenfield:

"Defendants seek to justify the COB clause on the ground that it takes away the 'profit' from an illness by reimbursing only up to an insured's medical expenses, reduces group health premiums, helps stabilize rising medical costs and eliminates medical malingering. Plaintiff, on the other hand, argues that the COB provision in defendants' comprehensive group health policies forces it to always be the primary carrier and pay 'first,' reduces benefits to the insured who receives but a single benefit for two or more premiums, and excludes plaintiff from the large employer market. Plaintiff reasons that employees with comprehensive group health plans which include, among many other things, protection against cancer, would be unreceptive to plaintiff's dread disease policy since their cancer recovery would be reduced under their group health plan to the extent of plaintiff's reimbursement. Plaintiff adduces certain evidence which allegedly demonstrates that the employees of several companies have dropped plaintiff's policies due to the COB provisions in their comprehensive group plans."

While AFL moved for a permanent, as well as a preliminary, injunction, it did not submit for a final decree. The motion for permanent injunction was properly denied for the reason well stated by Judge Edenfield:

"A permanent injunction for the plaintiff is obviously not proper at this early stage, since it would amount to a final determination of the action. The uncertain record in this case does not permit its issuance against the defendants. 3 Barron & Holtzoff, Federal Practice and Procedure, § 1433 [p. 494]."

Judge Edenfield called attention that the purpose of a preliminary injunction is to preserve the status quo, 7 Moore Federal Practice ¶ 65.04 [1], and that several factors must coalesce before the plaintiff may secure a preliminary injunction, including (1) that the plaintiff has no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) that the balance of hardships tilts toward the plaintiff; and (3) that the plaintiff has at least a reasonable likelihood of success on the merits. Judge Edenfield held: "On the present state of the record, plaintiff cannot carry the day on any of these factors."

We agree with Judge Edenfield's reasoning on the first two factors—irreparable injury[5] and the balancing of hardships.[6]

---

5. " * * * the plaintiff does not make out a clear case of irreparable injury. It states that people have canceled its cancer policy if they also carry defendants' COB group coverage and that its agents are often too discouraged to even solicit companies with COB group insurance coverage, recognizing that plaintiff's dread disease policy will not be truly duplicative and will therefore be undesirable to the employees. However, the plaintiff cites only a few instances of actual cancellation, hardly enough to establish irreparable injury. * * * While it may well be true, as plaintiff contends, that plaintiff would be doing more business absent the COB policies, it is not being irreparably damaged at present by their existence. Plaintiff's last annual report indicates that business is flourishing with an 85% increase in sales of cancer policies and with annualized premiums expected to increase this year by some $5 million. Plaintiff can still sell its policies to employees not covered by COB-type group health policies, as well as directly to individuals. Moreover, there is some reason to think that it may still be able to sell its cancer coverage to group health holders with antiduplication clauses, since with both the plaintiff's policy and the group policy, an insured would receive

See note 6 on page 1181.

Both the plaintiff-appellant and the defendants-appellees devote the major part of their respective briefs and arguments to the third factor—likelihood of success on the merits. The propositions of law are so intriguing that we are severely tempted. We are, however, bound by the consistent and wise policy of this Circuit not to decide the merits of a case on an appeal from a decision denying a motion for preliminary injunction.[7]

Application of some such rule is especially desirable in this case, because any decision on the merits would be of such importance that the losing party should have some opportunity to obtain review by the Supreme Court.

We hold simply that because of the plaintiff's failure with respect to the first two factors, irreparable injury and balancing of hardships, the district court did not abuse its discretion in denying plaintiff's motion for a preliminary injunction.

Affirmed.

full recompense for all of his cancer-related expenses. The group policy alone might not give this assurance. Additionally, money damage should be a sufficient substitute for injunctive relief, if plaintiff ultimately recovers. There is no reason to doubt the defendants' solvency if a final decision is rendered against them."

6. " * * * If the pendente lite injunction is denied, but the plaintiff ultimately prevails, its business during the interim would simply continue on its present course—a course anything but perilous. However, if the injunction is granted, and the defendants ultimately win, they may be inconvenienced. Plaintiff seeks an injunction against use of COB only against its own dread disease franchise policies. Therefore, during the pendency of the injunction, the defendants would be forced to discriminate between benefits paid to those insured with plaintiff, and those insured with others. In addition, those

people insured with both the defendants and the plaintiff would be required to pay higher premiums on their non-COB group policies. Such a temporary arrangement would create administrative problems for the defendants if the injunction was later dissolved. In short, the status quo, which a preliminary injunction seeks to maintain, would best be preserved by keeping the parties in their present positions. To grant the injunction would disturb the status quo as it has existed for several years, imposing hardships on the defendants."

7. Miami Beach Federal Savings & Loan Ass'n v. Callander, 5 Cir. 1958, 256 F. 2d 410; Detroit Football Company v. Robinson, 5 Cir. 1960, 283 F.2d 657; Barnwell Drilling Co. v. Sun Oil Company, 5 Cir. 1962, 300 F.2d 298; Tatum v. Blackstock, 5 Cir. 1963, 319 F.2d 397; Nalco Chemical Company v. Hall, 5 Cir. 1965, 347 F.2d 90; Nelms v. United Ass'n of Journeymen & App. of Plumbing, etc., 5 Cir. 1968, 405 F.2d 715.