**AMERICAN FAMILY LIFE ASSUR-ANCE CO. OF COLUMBUS, Plaintiff-Appellant,**

v.

**BLUE CROSS OF FLORIDA, INC., and Blue Shield of Florida, Inc., Defendants-Appellees.**

No. 72-3447.

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1973.

Malcolm A. Hoffmann, Bernard Zucker, Robert W. Bigger, Jr., Edward A. Woolley, New York City, Carey, Dwyer, Austin, Cole & Selwood, P. A., Miami, Fla., David Bender, New York City, for plaintiff-appellant.

James J. Kenny, Miami, Fla., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

COLEMAN, Circuit Judge:

The American Family Life Assurance Company of Columbus, Georgia, sued Blue Cross and Blue Shield of Florida. The complaint charged that enforcement of a "coordination of benefits" provision contained in defendants' plans for hospital and surgical benefits violated Section 1 of the Sherman Act, 15 U.S.C. § 1. Specifically, it was urged that the practice constituted boycott, coercion, intimidation, and other prohibited restraints of trade. A plan covering the municipal employees of Miami Beach was especially challenged.

After a Bench trial on the merits, the District Court dismissed the complaint, American Family Life Assurance Company of Columbus v. Blue Cross of Florida, Inc., 346 F.Supp. 267 (S.D., Fla., 1972). We affirm.

It is to be noted that prior to the beginning of this litigation plaintiff had sought temporary and permanent injunctive relief against eight large commercial health insurance carriers in the Northern District of Georgia. That case was reviewed by this Court as to the denial of preliminary injunctive relief and the denial was affirmed, American Family Life v. Aetna Life Insurance Company, 5 Cir., 1971, 446 F.2d 1178. That decision, of course, did not go to the merits.

The primary business of American Family Life is the sale of cancer plan insurance policies which provide for payment solely in the event of certain expenses incurred in connection with a confirmed diagnosis of cancer. Such

payments are made regardless of any benefits paid on the same risk by other insurance companies.

Blue Cross, a non-profit corporation, operates a hospital service plan.

Blue Shield, likewise a non-profit corporation, operates a medical or surgical plan.

Although there is some cavil to the contrary, both of these defendants are clearly subject to the supervision and regulation of the Florida Department of Insurance.

The coordination of benefits, sometimes referred to as "COB", is at the heart of the controversy. COB simply means that if the same hospital, surgical or medical risk is covered by more than one insurance carrier then the company insuring with a COB provision in its policies may reduce the amount of its payments by that payable from some other coverage. In other words, the claimant may not recover twice for the same expenses. If more than one policy of insurance has a COB provision then the primary carrier rule is applied.

The District Court described COB as follows:

"Adoption of a model COB provision was recommended in December 1962 by four trade associations of private health insurance companies, namely, the Health Insurance Association of America, the Life Insurance Association of America, the American Life Convention and the Health Insurance Council. COB has as its primary characteristic a structure of priority of claim payments which enables *broad risk accident and health insurance carriers* to reduce the amount of premiums paid out by limiting the claimants to a single payment of benefits for a single medical risk.

"If two or more policies would result in payment for more than 100% of the expenses, then coordination of benefits is applied. If, therefore, as is not infrequently the case in the event of a serious injury or illness, two or more policies, with or without coordination of benefits, provide together total benefits less than the expenses, coordination is not applied. For example, if as a result of a serious illness, hospital and medical expenses of $10,000 are incurred, and under two group policies a total of $7,500 is available, coordination of benefits would not apply at all. If hospital and medical expenses of $1,000 are incurred and $800 is available under one policy and $800 under another, and if either one or both of the policies have a coordination of benefits clause, then rather than paying $1,600, the total benefits under both policies would be limited to $1,000 by application of the coordination of benefits clause or clauses.

"When both policies have a coordination of benefits clause, then an order of benefits rule—the primary carrier rule—is applied. Under these rules, for example, the husband's carrier is considered primary and the wife's carrier secondary so that in the example, the husband's carrier would pay $800 and the wife's carrier would pay only $200 to bring the total up to 100%. When only one of the policies has a coordination of benefits clause, then the carrier without a coordination of benefits clause, such as the plaintiff, would always be deemed primary. This is known as the automatic primary rule or the dumping clause.

"The carrier without a coordination of benefits clause pays no more in that event than it has obligated itself to pay by its policy contract and the operation of the automatic primary rule or dumping clause cannot cause such a company to pay more than it would pay whether or not the other company had a coordination of benefits clause."

With the approval of the Insurance Commissioner of Florida (as the District Court found), the appellees began to write group hospital and group medical or surgical service plans with a coordination of benefits provision. They

have continued also to write this coverage without coordination of benefits provisions and a substantial number of subscribers are covered by such group contracts.

The District Court expressly found that the initiation of the COB provisions was done without any intent to harm the plaintiff's business, but rather was done so that Blue Cross and Blue Shield could remain competitive in the field of broad risk group health and accident insurance; the purpose was to avoid always paying first under the "dumping clause" of the model COB provision which had been adopted on a widespread basis by the private insurance industry in 1963 and 1964. The "dumping clause" is the portion of the Blue Cross-Blue Shield COB plan to which American Family Life objects.

American Family Life contends that its allegations of boycott are supported by what took place in Miami Beach. Since January, 1967, the appellees have provided group health and accident insurance coverage for the employees of the City of Miami Beach. The contract with the city includes a COB provision, so required by the city in its specifications for bids on the coverage.

The District Court thought there was "serious question" as to whether American Family Life sells group insurance as that term is used in the Blue Cross-Blue Shield insurance contract with Miami Beach employees; nevertheless, the appellees applied the provision to the cancer policies of the appellant because they were sold through a franchise group (payroll payment) plan. Obviously, the employees would object to paying two premiums in order to obtain one coverage as to cancer, so 58 of the 119 employees either cancelled or allowed their American Family Life cancer policies to lapse.

The Court proceeded to find, however, that:

"A single-risk policy such as the AFL Cancer Plan covers *only one risk of disease in the vast* market of policies covering medical risks, and the number of times the Blue Cross-Blue Shield COB provision is applied against plaintiff's policy is necessarily miniscule as compared with the payments made under the broad-risk policies. This is true since a concurrence of three factors must occur before such an application of COB is made by the defendants. The insured must be covered by the plaintiff's policy and that of the defendants, and the insured must have purchased his cancer risk policy from the plaintiff through a franchise group (payroll payment) plan."

American Family Life contended that the application of the Blue Cross-Blue Shield COB to their policies in Miami Beach constituted a boycott and amounted to a restraint of trade within the terms of Section 1 of the Sherman Act.

Blue Cross-Blue Shield took the position that there was no competition between them and American Family Life, hence there could be no violation of Section 1 because there was no restriction or abridgment of competition in the market place.

From the record before us it is evident that Blue Cross-Blue Shield do compete with commercial insurance companies engaged in *broad risk* hospital and medical insurance.

At the trial, American Family Life's President testified that his company does not engage in the general health and accident business in Florida, it does not sell cancer policies in Florida in competition with appellees (who write broad risk coverage), and it does not make any effort to write or sell cancer policies in Florida as a substitute for the insurance coverage sold there by the appellees.

The District Court held that American Family Life's cancer insurance business was not competitive in Florida with the broad group hospital, medical, and surgical coverage written by Blue Cross-Blue Shield; that the consequences of COB as applied to American Family Life was only a side effect of appellees' moves to

remain competitive in their own broad group insurance market. Therefore, said the Court, appellants had shown no entitlement to Sherman Act Section 1 relief, citing Apex Hosiery Company v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940)), and Prepmore Apparel, Inc. v. Amalgamated Clothing Workers of America, 5 Cir., 1970, 431 F.2d 1004.

The Court recognized that *Apex* was factually dissimilar but relied on the specific language therein appearing that:

> "Labor cases apart, which will presently be discussed, this Court has not departed from the conception of the Sherman Act as affording a remedy, public and private, for the public wrongs which flow from restraints of trade in the common law sense of restriction or suppression of commercial competition. In the cases considered by this Court since the Standard Oil Co. case in 1911 some form of restraint of commercial competition has been the sine qua non to the condemnation of contracts, combinations or conspiracies under the Sherman Act . . . ."

American Family Life, the appellant, now seeks reversal on the following grounds:

### 1.

The District Court erred in holding that there must be competition in order to have a Sherman Act Restraint of Trade;

### 2.

Even if competition is an indispensable prerequisite, the finding that there was no competition is clearly erroneous;

### 3.

The findings that American Family Life was not excluded from the cancer insurance market, that Blue Cross-Blue Shield did not intend to injure American Family Life, and that there was no coercion or intimidation are clearly erroneous; and finally,

### 4.

Blue Cross-Blue Shield are not exempt from the Anti-Trust Laws by reason of the McCarran-Ferguson Act, 15 U.S.C., §§ 1011–1013.

Blue Cross-Blue Shield respond that the fundamental principle expressed by *Apex,* and not yet abandoned by the Supreme Court, is that some form of restriction or suppression of competition is the *sine qua non* of Section 1 of the Sherman Act. They admit that one does not have to be a competitor to bring a Section 1 suit, as, for example, a purchaser is not in competition with a seller but he may be injured by the restriction or suppression of competition between the seller and others and thus may invoke the benefits of the Sherman Act.[1]

The acts, practices, methods, and operations of the respective insurance company litigants are not in dispute. The disagreement centers on the consequences—anti trust or no anti trust. In this setting we raise *sua sponte* the principle that a judgment which is correct in ultimate effect will not be disturbed on appeal even if the lower court relied on the wrong ground or gave an untenable reason for its decision, Texaco, Inc. v. Holsinger, 10 Cir., 1964, 336 F.2d 230, cert. denied 379 U.S. 970, 85 S.Ct. 669, 13 L.Ed.2d 563; Mindes v. Seaman, 5 Cir., 1971, 453 F.2d 197; McLain v. Lance, 5 Cir., 1945, 146 F.2d 341, cert. denied 325 U.S. 855, 65 S.Ct. 1183, 89 L.Ed. 1979.

---

1. The appellees also argue *in extenso* that the situation *sub judice* is governed by the McCarran-Ferguson Act because they are regulated by the Insurance Commission of the State of Florida and are not guilty of a boycott. McCarran-Ferguson provides that insurance business where regulated by state law is excluded from Sherman Act coverage in the absence of agreements or acts of boycott, coercion, or intimidation. The District Court made no findings of fact or conclusions of law on this point. Consequently, we intimate no opinion thereon.

We think the correct standard for the determination of the issue now before us was enunciated by the Third Circuit in Travelers Insurance Company v. Blue Cross of Western Pennsylvania, [dated July 10, 1973], 481 F.2d 80:

> "The antitrust laws, however, protect competition, not competitors; and stiff competition is encouraged, not condemned."

This statement was preceded by the observation that:

> "In its negotiating with hospitals, Blue Cross has done no more than conduct its business as every national enterprise does, i. e., get the best deal possible * * * Blue Cross passes along the saving thus realized to consumers."

That is the situation here. American Family Life does not write broad coverage hospital and medical insurance. Blue Cross-Blue Shield do write such coverage. American Family Life sells cancer plan policies. Blue Cross-Blue Shield writes such coverage only as incidental to or as a part of its broad coverage which protects the insured as to many diseases or disabilities. When they include COB in their policies these companies are simply providing that to a certain extent they shall not make the payments received or to be received from some other insurance policy, thus reducing the cost of their broad risk coverage as well as its cost to the insured.

■ This may be tough competition for American Family Life, which chooses to concentrate on only one dread risk, but the test is whether any restraint of trade thus caused is reasonable, Northern Pacific Railway Company v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed. 2d 545 (1958). In our opinion, there is no logical way in the context of this case by which the COB provisions can be pronounced "unreasonable". We cannot say under § 1 of the Sherman Act that an insurance company insuring against only one risk is entitled to dictate the terms upon which broad risk companies may offer their benefits to those individuals who need protection against many risks.

Stated another way, may the Blue Cross-Blue Shield COB provisions be invalidated under the Sherman Act so that American Family Life may write its cancer policies in the form it desires while at the same time denying the same right to Blue Cross-Blue Shield as to broad coverage? We think not, and we so hold.

While the District Court apparently chose to base its dismissal on "no competition", we base ours on the view that the record fails to reflect any prohibited competition.

In this context we attribute no controversial significance to what occurred as to the contract with the City of Miami Beach. There the insurer asked for bids on coverage that would include COB provisions. American Family Life did not offer a bid. It does not write the type of insurance which the purchasers desired.

The Judgment of the District Court is

Affirmed.