**AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS**

v.

**AETNA LIFE INSURANCE CO. et al.**

**Civ. A. No. 10582.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 28, 1973.

Malcolm A. Hoffman, New York City, Tom Watson Brown of Huie, Brown & Ide, Atlanta, Ga., Foley, Chappel, Hollis & Schloth, Kenneth M. Henson, Columbus, Ga., for plaintiff.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for all defendants except Continental.

## ORDER

EDENFIELD, District Judge.

A complete recitation of the facts of this case is contained in the reports of its previous appearances in this court and the Circuit Court of Appeals. *See* Order of Sept. 30, 1969, aff'd 446 F.2d 1178 (1971). They will therefore be repeated only to the extent necessary to identify the issues and the subject matter involved.

Plaintiff life insurance company sells a dread disease (cancer) policy which pays, up to specified limits, any expense incurred by the insured for specified medical and hospital care when incurred in connection with cancer. The defendants all sell comprehensive health and accident policies which pay, within their limits, for resulting hospital and medical expense incurred irrespective of the illness or accident from which they arise. Premiums for plaintiff's policies are sold on a "franchise" basis, usually a payroll deduction plan and many of those of defendants are "group" policies paid for, in whole or in part, by employers.

Since the 1950s, at least, one of the chronic complaints in the health and accident insurance field has been the problem of overinsurance; i. e., the situation where an insured by carrying more than one health insurance policy could thereby recover more than his actual expenses and could in fact make a profit, sometimes even a double recovery for his illness. It is established in the record that this practice was of genuine concern not only to the insurance companies but also to the American Hospital Association,

the American Medical Association and others, the feeling being that it contributed to both the overuse and overprice of hospital facilities and medical service as well as contributing to the rising cost thereof.

To combat this tendency the insurance companies in the field began adopting various "antiduplication" provisions, somewhat resembling the "other insurance" clauses in automobile policies, whereby each policy would provide that in case there was other insurance covering the same loss the present policy would be considered "excess" and would cover only the excess of the loss over the other insurance. This led to frequent disputes between the two or more carriers as to their respective coverage and obligation to pay, and in the late 1950s and early 1960s, and in an effort to standardize these provisions and resolve these frequent dilemmas, a number of companies in the field, including defendants, acting through two of their trade associations, drafted and recommended to the industry a model Coordination of Benefits provision (hereafter called COB) which, where two policies were involved, spelled out specific rules for ascertaining which insuring companies were liable for each loss and to what extent. The same provision was and is available to all companies in the field, including plaintiff if it chose to use it. Obviously, and as shown by the record, one of the effects of such a provision is to reduce the cost (premium) of defendants' complete coverage policies to the public.

For reasons sufficient unto itself, however, plaintiff has never used this or any other Coordination of Benefits provision in any of its cancer policies, and as a result when it suffers a loss which is also covered under one of defendants' COB policies, plaintiff, in accordance with the terms of its policy always has to pay in full and the defendant carrier, applying its COB provision only pays the excess, if any.

Each of the defendants sells a full line of health and accident policies covering any disease or accident, from any cause. Plaintiff's policies, however, cover only expenses from one disease—cancer; and as a result many employees, wanting full coverage, buy defendants' policies and forego plaintiff's single disease policy since with a competing COB policy involved the insured could only recover for his loss one time anyway.

In 1967 the plaintiff filed this action against the defendants charging that the collusion of the defendants in employing COB in their policies constituted a boycott of plaintiff and either a monopoly or an attempt to monopolize in violation of the Sherman Antitrust Law, 15 U.S. C. §§ 1 and 2. Following a spate of discovery on both sides plaintiff then moved for a temporary injunction which was denied by this court in 1969, which denial was thereafter affirmed by the Court of Appeals. 446 F.2d 1178, *supra*.

After more voluminous discovery thereafter, the defendants have now filed a motion for summary judgment which has now been briefed and argued and is ripe for decision.

After considering the motion the court concludes that the motion must be granted and the case dismissed for two reasons:

First: The court concludes that under the undisputed facts no boycott of plaintiff by defendants is shown and that the action is therefore barred by the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015, which exempts the "business of insurance" from the federal antitrust laws, to the extent regulated by the states, excepting only acts of "coercion, intimidation or boycott."

Second: The court concludes that, even if there were no McCarran-Ferguson Act the conduct complained of is not the kind of competition which is forbidden by the antitrust laws in any event.

Going to the first ground for dismissal, it is undisputed in the record that the employment of COB provisions by the defendant insurance companies in their policies is regulated by the insurance commissioners of all fifty states; and the Supreme Court of the United States

has held that the "contract of insurance" [and the type of policy which may be issued] and "its interpretation and enforcement" comprise the very "core" of those matters considered to be the "business of insurance" and which are left to the states by McCarran-Ferguson. SEC v. National Securities, 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

This court, of course, is keenly aware of the dangers of summary judgment, particularly in an antitrust setting and where questions of motives, intent and subjective feelings abound. *But see* First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), *and* Jones v. Borden Co., 430 F.2d 568, 574 (5th Cir. 1970).

In its complaint, of course, and in its brief, plaintiff here does assail defendants' motives and intent on every page, but the evidence and circumstances it adduces do no more than recite the advantages and the effects of COB and only convince the court the more that defendants' motives and purposes, already described in some degree, were simply not anticompetitive. In depositions both in this case and in a Florida case, *infra,* plaintiff's president admits that its single disease policy is not a competitor with or substitute for defendants' broad form coverage, that plaintiff's sales do not affect defendants' sales potential, and that defendants' interests are "not advanced in the slightest by the application of COB" to plaintiff's cancer plan. Under its plan plaintiff has to pay in full either way. Plaintiff's president also admits that in its inception COB was not aimed at plaintiff. Indeed, he could hardly do otherwise since at the time COB was begun plaintiff had not even commenced writing cancer policies. In short, here there simply is no target competitor or class of competitors at whom COB is aimed.[1] COB, where employed, applies against all health policies without coordination of benefits clauses, including a great number of such policies issued by defendants themselves. Finally, plaintiff or any other similar company is at perfect liberty to use COB itself at any time it chooses to do so.

As the court views COB, therefore, it is simply a new or at least a different product, and upon analysis, plaintiff's claim of boycott is not based so much on defendants' bad motive or exclusionary intent as upon the naked claim that the mere employment of a COB limitation at all, at any time, or against any insurance company (including defendants) amounts to boycott in itself.

■ The court simply cannot believe that the mere offering and sale of a new and different product,[2] available to all and forbidden to none, and which reduces the price to the public of a necessary coverage, either constitutes coercion, intimidation, or boycott or that it constitutes any kind of predatory competition within the meaning of antitrust, irrespective of McCarran-Ferguson.[3] Certainly the mere fact that the COB provision was perfected and standardized by defendants through a trade association does not ipso facto make it a boycott or a violation of antitrust. United States v. National Malleable & Steel Castings Co., 1957 CCH Trade cases ¶ 68,890 (N.D.Ohio), aff'd per curiam 358 U.S. 38, 79 S.Ct. 39, 3 L.Ed. 2d 44 (1957).

We think this is what the Fifth Circuit said and meant when it decided American Family Life Assurance Co. of Columbus v. Blue Cross of Florida, Inc. (5th Cir. Nov. 5, 1973), 486 F.2d 225, a

---

1. This court has never heard of a boycott case where some predatory purpose or intended exclusionary effect was not involved. Else we might still be chained to the outmoded mousetrap, the pony express and the horse and buggy.

2. Plaintiff's president conceded in this case that plaintiff's single disease policy "is not the same product" as that sold by defendants and, in the Florida case, *infra,* that "we sell only a partial product."

3. Also at stake here is the right of the public to buy a policy with or without COB, as it chooses.

case involving the present plaintiff and indistinguishable from the one here involved.

There Judge Coleman, speaking for the court, said:

"We think the correct standard for the determination of the issue now before us was enunciated by the Third Circuit in The Travelers Insurance Company v. Blue Cross of Western Pennsylvania, [July 10, 1973], 481 F. 2d 80:

'The anti trust laws, however, protect competition, not competitors; and stiff competition· is encouraged, not condemned.'

"This statement was preceded by the observation that:

'In its negotiating with hospitals, Blue Cross has done no more than conduct its business as every national enterprise does, i. e., get the best deal possible * * * * * Blue Cross passes along the saving thus realized to consumers.'

"That is the situation here. American Family Life does not write broad coverage hospital and medical insurance. Blue Cross-Blue Shield do write such coverage. American Family Life sells cancer plan policies. Blue Cross-Blue Shield writes such coverage only as incidental to or as a part of its broad coverage which protects the insured as to many diseases or disabilities. When they include COB · in their policies these companies are simply providing that to a certain extent they shall not make the payments received or to be received from some other insurance policy, thus reducing the cost of their broad risk coverage as well as its cost to the insured.

"This may be tough competition for American Family Life, which chooses to concentrate on only one dread risk, but the test is whether any restraint of trade thus caused is reasonable, North-

ern Pacific Railway Company v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L. Ed.2d 545 (1958). In our opinion, there is no logical way in the context of this case by which the COB provisions can be pronounced 'unreasonable'. We cannot say under § 1 of the Sherman Act that an insurance company insuring against only one risk is entitled to dictate the terms upon which broad risk companies may offer their benefits to those individuals who need protection against many risks.

"Stated another way, may the Blue Cross-Blue Shield COB provisions be invalidated under the Sherman Act so that American Family Life may write its cancer policies in the form it desires while at the same time denying the same right to Blue Cross-Blue Shield as to broad coverage? We think not, and we so hold."

The motion for summary judgment is granted and the case dismissed.[4]

It is so ordered.

---

4. The court intends this dismissal to be with prejudice; however, should certiorari be granted by the Supreme Court in the Florida *Blue Cross* case, we suggest that counsel

move the Fifth Circuit to withhold any opinion in this case until that case is disposed of. In this way, additional appeals of the same question may be avoided.