**NORTHEAST DEPARTMENT ILGWU HEALTH AND WELFARE FUND and Sol Hoffman, Plaintiffs,**

**v.**

**TEAMSTERS LOCAL UNION NO. 229 WELFARE FUND, Defendant.**

**Civ. No. 82-0745.**

United States District Court, M.D. Pennsylvania.

Dec. 30, 1983.

Charles W. Johnston, Harrisburg, Pa., for plaintiffs.

Robert D. Mariani, Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

This case is before the court based upon cross-motions for summary judgment. All of the material facts appear in the Stipulation, Document 7 of the Record, including, as Exhibit "A", plaintiffs' group insurance plan and, as Exhibit "B", defendant's group insurance plan. After careful consideration, the court will grant plaintiffs' motion for summary judgment and deny defendant's motion for the same.

### I.

The plaintiff, ILGWU Fund, is an employee benefit plan within the meaning of ERISA, 29 U.S.C. §§ 1002(1) and (3) and plaintiff Sol Hoffman is a fiduciary of the ILGWU Fund in accordance with 29 U.S.C. § 1002(21). Stipulation, Document No. 7 of the Record at 2. The defendant, Teamsters Fund, is also an employee benefit plan within the meaning of 29 U.S.C. §§ 1002(1) and (3). *Id.* The eligibility rules for the ILGWU Fund and the Teamsters Fund are promulgated by the trustees of their respective Funds through authority granted by the terms of their collective bargaining agreements. *Id.* at 2–3. The eligibility rules of the ILGWU Fund under review here state:

You are not eligible for hospital, medical-surgical, or Major Medical benefits under this plan if there exists at your spouse's place of employment a group plan which provides for family coverage of these types of benefits so long as 50% or more of the cost of such family coverage is paid by other than you or a member of your family.

*Id.* at 3, citing Summary Plan Description of the ILGWU Fund at 7. The applicable eligibility rules of the Teamsters Fund provide:

Our Group Insurance Plan contains a non-profit provision coordinating it with other plans under which an individual is covered so that the total benefits available will not exceed 100% of the allowable expenses....

When a claim is made, the primary plan pays its benefits without regard to any other plans. The secondary plans adjust their benefits so that the total benefits available will not exceed the allowable expenses. No plan pays more than it would without the coordination provision.

A plan without a coordinating provision is always the primary plan. If all plans have such a provision: (1) the plan covering the patient directly, rather than as an employee's dependent, is primary and the others secondary, (2) if a child is covered under both parents' plans, the father's is primary, (3) if neither (1) nor (2) applies, the plan covering the patient longest is primary.

*Id.* at 4–5, citing Summary Plan Description of the Teamsters Fund at 35.

This case is before the court as a result of both the ILGWU Fund and the Teamsters Fund denying coverage for medical bills submitted to them for services incurred by Ruth Fazio. Mrs. Fazio, an employee in the garment industry, is a participant in the ILGWU Fund and a beneficiary of the Teamsters Fund (inasmuch as her husband is employed in an industry covered by the Teamsters Fund). *Id.* at 5. After receipt of the bills, the ILGWU Fund ad-

vised Mrs. Fazio that she was not eligible for hospital, medical-surgical or Major Medical benefits since she was covered by the Teamsters Fund as a dependent.[1] The Teamsters Fund determined they would not pay the bills since their plan coordinates against other plans under which an individual is covered.[2]

The issues for this court to address are:

(1) Whether the ILGWU Fund or the Teamsters Fund is responsible for Ruth Fazio's medical bills.

(2) If the Teamsters Fund is primarily responsible, whether the ILGWU Fund discriminates against its members on the basis of marital status.[3]

## II.

### A. Coverage Issue

■ The court must initially decide whether the medical bills incurred by Ruth Fazio are payable by the Teamsters or the ILGWU Fund. This issue appears to be one of first impression involving questions of contract interpretation and general principles of insurance law. While there is little law dealing with the issue of double coverage for health insurance, the same principles applied in auto insurance cases are applicable. Even if an individual purchases two policies of insurance, the total amount recoverable by the insured may not exceed the amount of the loss. By the same token, however, he should not receive less than he would if he were protected by only one of the policies. *See* 8A Appleman, *Insurance Law and Practice* § 4907 at 354 (1981). Where an insured is covered by more than one policy, "the rights and liabilities of the different insurers involved depend, at least in part, upon the specific language of the policies." *Id,* at 364. A duplicate insurance clause does not "create coverage where none exists ... the allocation of liability between insurers is determined by contract, and where such contractual provisions are not inconsistent with public policy, they will be enforced." *Id.* at 365–67.

■ In the area of health insurance, it is becoming a common occurrence for a spouse to be covered both as a direct beneficiary and also as a dependent beneficiary of a spouse's employment group contract. In order to avoid duplicate recovery by a beneficiary, the health insurance industry has developed a technique called the coordination of benefits provision (COB).[4] *See Starks v. Hospital Service Plan of N.J.,* 182 N.J.Super. 342, 440 A.2d 1353, 1354 (1981). Approaches to the duplicate-coverage problem generally fall into one of three

---

**1.** The Teamsters Fund provided dependent coverage for Ruth Fazio the cost of which was totally borne by her husband's employer. Based upon the exception to eligibility rules of the ILGWU Fund, coverage was denied by the ILGWU Fund.

**2.** The Teamsters Fund determined that if the ILGWU Fund had a coordinating provision it would be required to pay Mrs. Fazio's bills since it covered her directly as an employee rather than as an employee's dependent. The Teamsters Fund also found that if the ILGWU Fund did not have a coordinating provision, it would still be the primary plan and would be obligated to pay the bills.

**3.** ERISA, and the Guidelines promulgated thereunder, provide that it is an unlawful employment practice to discriminate between men and women with regard to fringe benefits or to make available benefits for husbands and their families not available to wives and their families. *See* 29 C.F.R. § 16049(b) and (d) (1982).

The Teamsters Fund, in this action, is apparently alleging discrimination issues exist as to Ruth Fazio who had previously dismissed her action, Civil No. 81–1377, against both the Teamsters and ILGWU Funds in order to obtain declaratory relief in the action currently before the court.

**4.** The COB approach has been explained by one court:

COB has as its primary characteristic a structure of priority of claim payments which enables broad risk accident and health insurance carriers to reduce the amount of premiums paid out by limiting the claimants to a single payment of benefits for a single medical risk. If two or more policies would result in payment of more than 100% of the expenses, then coordination of benefits is applied.

*Starks,* 440 A.2d at 1354 citing *American Fam. Life Assur. Co., Columbus v. Blue Cross, Fla.,* 346 F.Supp. 267, 268–69 (S.D.Fla.1972), *aff'd* 486 F.2d 225 (5th Cir.1973), *cert. denied,* 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974).

broad categories: (1) a carrier remains primarily liable despite other insurance but ordinarily bears only a pro rata liability with other primary insurers; (2) excess insurance clause where carrier pays the loss to the extent it exceeds other available insurance; and (3) escape clause where carrier disclaims all liability if other insurance is available. *Id.* 440 A.2d at 1355. This escape clause, though, only applies when there is a loss covered by the policy. Therefore, when an exclusion operates to eliminate coverage under the policy, the duplicate insurance clauses are not applicable. *See Liberty Mutual Insurance Co. v. State Farm Auto. Ins. Co.*, 262 Md. 305, 277 A.2d 603 (Md.1971).

In determining where the primary coverage falls, we must first "determine from the contracts themselves what obligations the respective obligors intended to assume and then to determine whether these intentions are compatible not only each with the other but also with the insured's rights and expectations and with the controlling demands of public policy." *Starks*, 440 A.2d at 1358. The ILGWU Plan clearly states that an individual is not eligible for hospital, medical-surgical, or Major Medical benefits if his or her spouse's employer provides coverage for "these types of benefits" and bears at least fifty percent of the cost. The Teamsters Plan, on the other hand, provides coverage for "these types of benefits" and does not invoke the coordinating provision unless there is another plan "under which an individual is covered." The individual involved here is Mrs. Fazio and, in such circumstances, she simply has no coverage for these benefits. (Defendant has not argued that the Team-

sters Plan would provide less of "these types of benefits" than the ILGWU Plan). If this court were to require the ILGWU Plan to undertake primary responsibility to the insured or even to share the payment of benefits pro rata with the Teamsters Plan, the intention of the ILGWU Plan would be defeated. The ILGWU Plan intended that the insured not be "covered" when there exists other insurance. In fact, the Plan has available another set of benefits which may be available if an individual is not covered by the hospital, medical-surgical and major medical program.[5] The Ladies Garment Workers adopted this Plan with the economic realities of their situation in mind, realizing the limiting financial constraints in which they work.[6] *See* Brief of Plaintiffs, Document No. 12 of the Record at 13–14.

■ Having determined that it was the intention of the ILGWU Fund in the first instance not to cover individuals otherwise covered by a spouse's insurance, the court must next consider the expectations and rights of the participants in the Fund. It is clear from the language of the ILGWU Summary Plan Description that they did not intend to cover participants in Mrs. Fazio's situation, while the Teamsters Summary Plan Description instead coordinates its coverage with other plans *covering* her. Since it has been determined that the ILGWU Plan provided no hospital, medical-surgical or major medical coverage for Ruth Fazio, the Teamsters Fund's COB provisions do not apply. The participants of the ILGWU Fund have been given adequate notice of the exclusion where there is coverage through a spouse. Therefore, the

---

**5.** The section of the ILGWU Summary Plan Description entitled "Other Benefits" provides:

It is the purpose of the Plan to provide benefits that protect you as a worker from economic loss resulting from non-occupation injury or illness.

If you are not covered by the hospital, medical and major medical programs you may be eligible for the following benefits.
Supplemental Disability Benefits...
Dependents' Supplemental Benefits...
Major ·Medical Deduction Supplement....

ILGWU Summary Plan Description at 33. In providing these benefits, members of the ILGWU Fund can reasonably expect to receive more benefits than they would with coverage only by the Teamsters or ILGWU individually because she would receive benefits from both sources.

**6.** The court recognizes the fact that generally members of the ILGWU have lower salaries than members of the Teamsters Union. It therefore follows that the ILGWU Fund has more limited financial resources from which to draw in distributing benefits.

expectations and rights of the participants in the ILGWU Fund are not thwarted by the Plan's provision denying regular medical and hospital coverage when a spouse carries such insurance through his employer.

There appears to this court to have been a basic unfairness to Ruth Fazio in being denied benefits by both the ILGWU and the Teamsters Fund. In view of the fact that two collective bargaining contracts are involved, we must take a fundamental approach to the problem and construe the meaning of the contracts literally. A basic contract principle that must be applied is that where there is room for ambiguity it must be resolved against the writer of the policy. The ILGWU plan includes a specific exclusion denying Ruth Fazio coverage where her spouse's employer provides coverage. The Teamsters plan, however, includes only a coordination of benefits provision which is predicated on having available other coverage to qualify as the primary plan. Since it has been determined that the ILGWU Plan does not provide "coverage" to Ruth Fazio, the Teamsters coordination provision never needs to be applied. If, however, both plans were to contain an exclusion of benefits provision, the result would likely change. The exclusion in the ILGWU Plan covering Ruth Fazio would not apply since there would not be benefits at her spouse's place of employment providing "family coverage" due to the Teamsters exclusion. In the situation in issue here, though, only the ILGWU Plan contains an exclusion; therefore, the Teamsters is the only plan providing medical coverage to Ruth Fazio.

### B. Discrimination Issue

Finally, the court must determine whether the ILGWU Fund violates public policy in containing such an exclusion of benefits provision. The defendants contend that the ILGWU Fund's Trustees violated ERISA by discriminatorily denying benefits to participants of the Fund on the basis of marital status and sex. Trustees who are vested with full authority over a welfare fund are held to the "arbitrary and capricious" standard generally applicable to fiduciaries. *See Kosty v. Lewis,* 319 F.2d 744, 747 (D.C.Cir.1963). The defendants' claim that the Trustees of the ILGWU Fund breached their fiduciary duty with regard to the eligibility rule because it draws a distinction by virtue of marital status. In addition, they contend that since the rule bears no rational relationship to any incident of employment, union membership or to the statutory purpose of the Fund, the trustees have discriminated against eligible members who are married in an arbitrary and capricious manner. *See* Brief of Defendant, Document No. 10 of the Record at 8–20. Congress has provided in ERISA that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (1) providing benefits to participants and their beneficiaries...." 29 U.S.C. § 1104. However, where the trustees have adopted a provision "because they feared that the Fund might become financially impaired, [t]hey did not act in an arbitrary and capricious fashion but rather within their discretion as fiduciaries." *Int'l. A. of Bridge, Structural and Ornamental Iron Workers Local No. 111 v. Douglas,* 646 F.2d 1211, 1215 (7th Cir.1981). *See also Wambheim v. J.C. Penney Co.,* 705 F.2d 1492 (9th Cir.1983) (where the appeals court concluded that legitimate business considerations justify the head of the household rule); *Local Union No. 5 v. Mahoning and Trumbull City Bldg. Trades Welfare Fund,* 541 F.2d 636 (6th Cir.1976) (where the court held that the eligibility rule adopted by the trustees for the purpose of protecting the long-term viability of the fund did not violate the fiduciary duty imposed on trustees); *Wetzel v. Liberty Mutual Ins. Co.,* 511 F.2d 199 (3d Cir.1975), *vacated and remanded on other grounds,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (where the court determined that there was discriminatory impact but recognized the legitimacy in maintaining the financial integrity of the fund). The Court of Appeals for the Fourth Cir-

cuit, in a case based on alleged gender-based discrimination resulting from an employer's disability package, explained that since "the dependency requirement applied with equal force to male as well as female employees ... the alleged discrimination, if any, was based upon the marital status of the participant and did not give rise to a cause of action for sex discrimination...." *Willett v. Emory and Henry College*, 569 F.2d 212 (4th Cir.1978) (per curiam).

 It is this court's belief that the ILGWU Fund and its Trustees have acted in a wholly legitimate manner, without any discrimination based upon sex or marital status. As the plaintiffs point out in their brief, the exclusion of benefits rule only applies when other coverage of a comparable type exists. *See* Brief of Plaintiffs, Document No. 12 of the Record at 23. Moreover, the fact that there are more of one gender in a particular plan, without more, does not make it discriminatory. The exclusion applies whether the participant is male or female. There is, likewise, no discrimination based upon marital status. A married person still gets total coverage, albeit from another source. If plaintiff does not receive these types of benefits from her spouse's carrier, then she receives them from her own. There is no discrimination. In alleging that discrimination exists, the defendants rely on cases in which an individual was denied benefits without other comparable benefits existing. *See e.g., Kraft Co., Inc. v. State*, 284 N.W.2d 386 (Minn.1979). The ILGWU rule in contrast only excludes coverage when there are other benefits available and may even provide supplemental benefits when such exclusion applies.

Lastly, there are allegations that the eligibility rule violates Section 404 of ERISA, 29 U.S.C. § 1104, as not being in the best interest of the ILGWU participants. As several courts have determined, *supra*, a valid consideration for trustees of a Fund such as this is the economic realities of the situation. Plaintiffs' Brief, *supra*, at 26-27, explains that due to conditions existing in the garment industry (*i.e.*, low salaries),

in order to preserve the Fund while not affecting the amount of benefits received by participants they chose to exclude coverage to individuals with other insurance. Whether this method of preserving the trust was the best method is not under review. As long as the trustees acted in a manner not "arbitrary or capricious" their decision must be upheld. Clearly, Trustees of the ILGWU Fund did not act arbitrarily or capriciously in enacting an eligibility rule which leaves no participant with less coverage and maintains the financial integrity of the Fund.

Therefore, since the Teamsters Fund is responsible for Mrs. Fazio's medical bills and there is no discrimination on the part of the ILGWU Fund, the court will grant Plaintiffs' cross-motion for summary judgment and deny defendants' motion for the same. An appropriate Order will enter.