Jeanne NUNEZ, Raymond Perez, and Richard Morgan, Plaintiffs,

v.

MONTEREY PENINSULA ENGINEERING et al., Defendants.

Civ. No. C 93–20510 EAI.

United States District Court, N.D. California.

Nov. 7, 1994.

Richard K. Grosboll, Carolyn A. Anderson, Neyhart, Anderson, Reilly & Freitas, San Francisco, CA, for plaintiffs.

Richard A. Leasia, Marlene S. Kleinman, Littler, Menderson, Fastiff, Tichy & Mathiason, San Jose, CA, for defendant Monterey Peninsula Engineering Profit Sharing Plan.

C. Michael McClure, Monterey, CA, for defendants Monterey Peninsula Engineering and Bart J. Bruno.

## MEMORANDUM & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

INFANTE, United States Magistrate Judge.[*]

### I. INTRODUCTION AND BACKGROUND

This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiffs Jeanne Nunez, Raymond Perez and Richard Morgan are each former employees of defendant Monterey Peninsula Engineering ("MPE"), which sponsors and administers defendant Monterey Peninsula Engineering Profit Sharing Plan (the "Plan") in which plaintiffs are, or were, participants.[1] Defendant Bart J. Bruno is president of MPE and is primarily responsible for administering the Plan.[2] The action was filed on July 16, 1993, and the pleadings were amended in March 1994.

#### A. *Plaintiffs' First Amended Complaint*

Plaintiffs' First Amended Complaint asserts four causes of action:

##### 1. *First Cause of Action* [3]

Allegedly, in the late 1980's or early 1990's, defendants amended the Plan, without notice

---

[*] The matter was heard before a magistrate judge by the consent of the parties. 28 U.S.C. § 636(c).

1. First Amended Complaint, filed March 30, 1994, ¶¶ 2–7, 9.

2. *Id.,* ¶ 8.

3. *Id.,* ¶¶ 25–30.

to its participants. Previously, Plan participants had been entitled to the option of receiving a lump sum benefit distribution immediately upon termination of their employment with MPE. Under the Plan amendment, participants are required to endure an 18–month waiting period before being entitled to distribution of benefits.[4] Plaintiffs contend that the amendment of the Plan so as to eliminate the immediate lump-sum benefit option violated the terms of the Plan, as well as ERISA and its accompanying regulations.[5] They seek an order requiring defendants to pay plaintiffs accrued interest for the period between plaintiffs' termination of employment until the respective dates each plaintiff's vested benefits were paid.[6]

### 2. Second Cause of Action [7]

Plaintiff Perez alleges, on information and belief, that "only a portion of the retirement funds to which he was entitled for his work on public works projects was contributed by MPE on his behalf and collected by the Plan". The remaining portion was allegedly allocated to the profit-sharing accounts of other employees, including defendant Bruno and his family.[8] Perez alleges that defendants' failure to collect, credit and properly allocate pension contributions on his behalf constituted a breach of their fiduciary obligations under ERISA and violated a host of other federal and state laws.[9]

### 3. Third Cause of Action [10]

Perez also alleges that MPE improperly failed to make any contributions to the Plan on his behalf for Plan year 1991, notwithstanding that he was employed on the last *working* day of the Plan year, November 27,

1991.[11] Allegedly, the Plan requires participants to be employed on the very last day of the Plan year, in this case November 30, 1991, regardless whether it falls on a weekend or a holiday.[12] Perez avers, however, that defendants never furnished him with a copy of a summary plan description, as ERISA requires. Had defendants done so he would have been informed of the specifics of the Plan's requirements and would have ended his employment effective three nonworking days later.[13]

### 4. Fourth Cause of Action [14]

Finally, plaintiffs Nunez and Perez allege that, pursuant to ERISA regulations and prior to filing the lawsuit, they requested pertinent documents and information from defendants relating to Nunez's and Perez's entitlement to benefits.[15] Allegedly, defendants failed to timely comply with the requests in violation of ERISA and its regulations.[16]

### B. Defendants' Motion for Summary Judgment

Defendants have presently moved for summary judgment, asserting (1) that plaintiffs lack standing to assert claims under ERISA because they are no longer "participants" in the Plan and (2) that "[n]one of plaintiffs' causes of action have merit".[17] For the reasons which follow, the motion is granted in part and denied in part. Defendants are entitled to summary adjudication in their favor on the second and fourth, but not the first and third, causes of action of plaintiffs' First Amended Complaint.

---

4. *Id.,* ¶ 26.

5. *Id.,* ¶ 27.

6. *Id.,* Prayer for Relief, ¶ 3.

7. *Id.,* ¶¶ 31–36.

8. *Id.,* ¶ 33.

9. *Id.,* ¶¶ 32–36.

10. *Id.,* ¶¶ 37–40.

11. *Id.,* ¶ 38.

12. See *id.,* ¶ 39.

13. *Id.,* ¶¶ 38–39.

14. *Id.,* ¶¶ 41–46.

15. *Id.,* ¶¶ 42, 44.

16. *Id.,* ¶¶ 45–46.

17. Memorandum of Points and Authorities in Support of Motion for Summary Judgment, etc. ("Defendants' Brief"), at p. 1.

## C. *Material Facts*

The material facts are undisputed.[18] Plaintiffs are all former employees of MPE who are, or were at the time of their employment, participants in the Plan.[19] Plaintiffs all terminated their employment during the 1990–91 Plan year, which ran from December 1990 through November 1991.[20] Plaintiffs do not intend to return to work with MPE and do not anticipate accruing additional benefits under the Plan.[21] Plaintiff's earned *and* received vested benefits under the Plan as follows: (1) Nunez, $5,686.07 distributed on November 23, 1993; (2) Perez, $8,440.16 on September 22, 1993; and (3) Morgan, $34,709.50 on November 5, 1993.[22]

Defendant Bart Bruno is president and chairman of the board of directors of MPE. His two sons, Paul and James Bruno, are also officers and directors of MPE. MPE administers the Plan, and defendant Bart Bruno is the Plan's trustee.[23]

The terms of the Plan are set forth in multiple documents:[24] (1) the Prototype Defined Contribution Plan and Trust;[25] (2) the Adoption Agreement;[26] and (3) a one-page Attachment A to the Plan, which became effective December 31, 1988 and was revised May 31, 1992.[27]

Attachment A by its terms adopted a pair of "policy changes [which] have been deemed to be in keeping with the original intent of the profit sharing plan by the plan administrators".[28] One of these changes provided for payment of termination benefits to be made either five years after termination, upon the participant's fifty-second birthday, or death, whichever was earlier.[29] Prior to adoption of Attachment A at the end of 1988, MPE permitted a participant who terminated his or her employment to receive Plan benefits at the end of the Plan year in which the participant terminated his or her employment.[30]

18. The parties quarrel in their respective "separate statements" of fact about various matters which are fundamentally legal interpretations of the facts. The Court thus derives the factual scenario from the parties factual statements (including evidentiary references) in their respective briefs.

19. *First Amended Complaint,* ¶¶ 3–5, 9; Plaintiff's Opposition Memo to Summary Judgment Motion ("Opposition Brief"), at p. 1.

20. Declaration of Paul Bruno ("P. Bruno Decl."), ¶ 8.

21. As defendants indicate, plaintiffs have not alleged otherwise in their First Amended Complaint. Nor do plaintiffs challenge the assertion on this motion.

22. P. Bruno Decl., ¶¶ 9–10. Paul Bruno is MPE's controller and "perform[s] many of the tasks necessary to the administration of the Plan" and is thereby aware of "the monetary amount of each employee's benefits in the Plan, and when each employee receives his or her disbursement from the Plan". *Id.,* ¶¶ 1 and 3. Plaintiffs assert that they are entitled to greater benefits under the Plan, which they have not received, but that is a *legal* question and one which is the focus of the instant motion.

23. Declaration of Richard K. Grosboll ("Grosboll Decl."), ¶ 5 and Exhibit A (copy of pertinent portions of deposition transcript of defendant Bruno ["B. Bruno Depo. Tr."], at 9:15—11:13; 12:2–5; 33:17—34:4).

24. *See* Defendants' Brief, at pp. 1–2.

25. P. Bruno Decl., ¶ 13 and Exhibit A (copy of a 68–page document denoted Prototype Defined Contribution Plan and Trust). Note that Exhibit A also contains two separate, single-spaced MPE board of directors resolutions, one adopted November 28, 1983, the other adopted November 30, 1990. The 1983 resolution purports to adopt the Plan. The 1990 resolution purports to authorize various MPE corporate officers, all members of the Bruno family, to calculate and deposit contributions to the Plan.

26. P. Bruno Decl., ¶ 14 and Exhibit B (copy of adoption agreement purportedly "in effect at the time the Plaintiffs were terminated"). Exhibit B is a two-page document, hand dated June 13, 1990, which consists almost entirely of illegible miniature type.

27. *Id.,* ¶¶ 15–16 and Exhibits C and D (copies of Attachment A and Revised Attachment A, respectively).

28. *Id.,* Exhibit C.

29. *Id.*

30. Declaration of Ray Perez ("Perez Decl."), ¶ 2. Plaintiffs were not given prior notice of these so-called "policy changes". *Id.* Although the matter of notice is disputed in the parties' pleadings, *compare* First Amended Complaint, ¶ 10 (alleging lack of notice of change) *with* Joint Answer to First Amended Complaint, ¶ 10 (denying same),

The five-year period has since been revised to eighteen months,[31] and plaintiffs' benefits were ultimately distributed *after* the lawsuit was filed, in partial settlement of the claims originally asserted by plaintiffs.[32] The parties' joint case management conference statement provides:

"The parties agree that plaintiffs shall be entitled to cash the disbursement checks recently issued to them by the MPE Plan without waiving their right to proceed against the defendants in this action, and that the plaintiffs' receipt of said checks does not preclude them from seeking greater benefits which may be due. Plaintiffs acknowledge that their receipt of such benefits may render moot one or more of their claims. "Plaintiffs agree that their receipt of benefits cuts off any accrual of interest on the amount received up to the date of receipt." [33]

The terms of the Plan are summarized in a summary plan description ("SPD") but plaintiff Perez was never furnished with one by MPE.[34] Perez terminated his employment with MPE on November 27, 1991, the last work day of November preceding the Thanksgiving holiday weekend; he did so without being informed that if he terminated his employment effective three days later, on November 30, 1991, MPE would have been required to make a contribution to the Plan on his behalf.[35]

On or about October 26, 1992, an attorney representing Nunez and Perez (among others) requested in writing (among other things) that defendant Bruno, on behalf of MPE, provide documents in response to 13 enumerated requests.[36] In response, MPE provided Nunez's and Perez's attorney with several documents "on or before" November 25, 1992: (a) a copy of the then-current summary plan description; (b) a copy of an SPD in existence prior to the then-current SPD; (c) a copy of the annual reports completed by the Plan during the years 1988–1991; (d) a copy of the then-current Plan; (e) a copy of the then-current adoption agreement; and (f) a copy of the then-current investment plan.[37] Unsatisfied with the response, Nunez's and Perez's counsel dispatched another letter to defendant Bruno, dated March 8, 1993, containing a "reiteration" of the document requests.[38] Paul

---

defendants have not provided evidence countering Perez's attestation that he does not recall receiving notice.

**31.** *Id.,* Exhibit D.

**32.** Defendants assert in their papers, without evidence, that "[p]laintiffs' vested benefits were distributed in accordance with the latter policy", i.e., the one calling for distribution *eighteen* months after termination. Defendants' Brief, at p. 2. Further, defense counsel argued at the hearing on the instant motion that "the distributions of the benefits were made at the time they would have been made, regardless of the lawsuit. It was in the natural course of administering the plan, and it came time to give the distributions. We offered plaintiffs their distributions." Transcript of Proceedings, dated September 12, 1994 ("Tr."), at 18:11–15. However, counsel's assertion is impeached by the simple chronology of events. For example, it is undisputed that Perez's employment terminated on November 27, 1991, and he received his distribution on September 22, 1993, roughly *twenty-two* months later. Similarly, Morgan had to wait *twenty-four* months, from November 1991 when he was terminated until November 1993 when he received benefits. *See* First Amended Complaint, ¶ 11 (listing termination dates). Nunez had to wait the longest period, *thirty-nine* months, from August 1990 to November 1993. *Id.*

**33.** Grosboll Decl., Exhibit G (copy of joint case management conference statement, ¶ J).

**34.** Perez Decl., ¶ 4.

**35.** *Id.,* ¶ 5.

**36.** P. Bruno Decl., ¶¶ 11 and 18 and Exhibit F (copy of letter from Grosboll to defendant Bart Bruno). Paul Bruno has not established in his declaration that he was in a position to have received, and therefor authenticate, the letter in question. Plaintiffs, however, do not dispute its authenticity. ·

**37.** *Id.,* ¶ 12. These documents were apparently supplied to plaintiffs' counsel without any form of cover letter memorializing the production or explaining what was being produced and perhaps as importantly whether any requested documents were being withheld and the asserted grounds therefor. Certainly no such correspondence, if it existed, has been presented to the Court.

**38.** *Id.,* ¶ 19 and Exhibit G (copy of unsigned letter from Grosboll to defendant Bruno, dated March 8, 1993).

Bruno sent a reply letter, dated March 23, 1993, claiming he had "scrupulously" attempted to provide all the items counsel was statutorily entitled to receive.[39]

## II. *DISCUSSION*

### A. *Standard for Reviewing Summary Judgment Motion*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". Fed.R.Civ.P. 56(c).

The standard for determining whether summary adjudication of a claim is appropriate is identical to that for evaluating a motion for judgment as a matter of law under Rule 50: "the trial judge must direct a verdict, if under the governing law, there can be but one reasonable conclusion as to the verdict". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge [when] he is ruling on a motion for summary judgment". *Id.*, 477 U.S. at 253, 106 S.Ct. at 2513. Hence, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor". *Id.*

### B. *Plaintiffs' Standing to Bring ERISA Claims*

"ERISA carefully enumerates the parties entitled to seek relief [thereunder]". *Franchise Tax Bd. v. Const. Laborers Vacation Trust for Southern California*, 463 U.S. 1, 25, 103 S.Ct. 2841, 2855, 77 L.Ed.2d 420 (1983); *see* 29 U.S.C. § 1132(a). "The *express* grant of federal jurisdiction in ERISA is limited to suits brought by certain parties ..." *Franchise Tax Bd., supra*, 463 U.S. at 20, 103 S.Ct. at 2852 (emphasis added).

Among those *expressly* entitled to bring suit under ERISA are "participants". 29 U.S.C. § 1132(a)(1). A participant is defined by statute as:

"any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ... or whose beneficiaries may be eligible to receive any such benefit."

*Id.*, § 1002(7). The statutory definition of a participant does not subsume former employees unless they " 'have a reasonable expectation of returning to covered employment' or [ ] have a 'colorable claim' to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989) (citations omitted). Claimants who seek a damage award, rather than vested benefits improperly withheld, lack standing to bring suit under ERISA. *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 474 (10th Cir.), *cert. denied*, 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990).

Defendants contend that plaintiffs are no longer Plan participants entitled to sue under ERISA because they are *former* employees who have "neither a 'reasonable expectation of returning to covered employment' nor 'a colorable claim to vested benefits'."[40] Defendants point out that plaintiffs have supplied no evidence (or allegation) that they anticipate resuming employment with MPE. Further, defendants argue that plaintiffs have received a lump-sum payment " 'of all their vested benefits' " and thus have no colorable claim to vested benefits.[41] At the

---

39. *Id.*, ¶ 20 and Exhibit H (copy of letter from Paul Bruno to Grosboll, dated March 23, 1993).

40. Defendants' Brief, at p. 5.

41. *Id.*, at p. 6, quoting *Mitchell, supra*, 896 F.2d at 474. Neither the first nor fourth causes of action of the First Amended Complaint asserts that vested benefits have been improperly withheld, and these are the only claims to which plaintiffs Nunez and Morgan are parties. (Nunez is a party to both the first and fourth claims, Morgan only to the first.) As originally configured, in July 1993, the first cause of action was for wrongful withholding of vested benefits, but after benefits were distributed, the claim was amended to seek damages for "late payment of benefits". However, the second cause of action, asserted by Perez alone, alleges that benefits Perez earned on public works projects, and to which he was entitled, were not allocated to him.

hearing on the motion, plaintiffs' counsel counter-argued that the standing issue is a "red herring":

"I want to remind the Court that this—when this lawsuit was filed, each of the plaintiffs in this suit had not received their benefits. They were still waiting to receive those benefits. . . . So, it was during the pendency of the lawsuit that there was a distribution of benefits. And during the lawsuit, there was a Catch–22 situation. Plaintiffs wanted to receive at least the benefits to which they thought they were entitled, but they did not want to waive their rights to pursue [their other claims for relief]. . . . So, I think when you look at the standing issue, you have to put that into context because it is undisputed that all three of these plaintiffs were participants in the plan when this lawsuit was filed . . ." [42]

Ninth Circuit case law nominally supports plaintiff's contention: "Whether a person is a plan participant must be decided *at the time of the filing of the lawsuit.*" *Harris v. Provident Life and Accident Ins. Co.*, 26 F.3d 930, 933 (9th Cir.1994); see also, *Olson v. General Dynamics Corp.*, 960 F.2d 1418, 1422 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2968, 119 L.Ed.2d 588 (1992) (*"At the time he filed his suit,* Olson was receiving benefits [and] was therefore a 'participant' ") [emphasis added]; *Nishimoto v. Federman–Bachrach & Associates,* 903 F.2d 709, 714 (9th Cir.1990) ("former employees whose vested benefits under a plan have already been distributed in a lump sum *at the time they file suit* are not 'participants' within the meaning of [ERISA]") [emphasis added]; *Kuntz v. Reese,* 785 F.2d 1410, 1411 (9th Cir.), *cert. denied,* 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986) ("plaintiffs are not participants because, as former employees whose vested benefits under the plan have already been distributed in a lump sum, [they] were not 'eligible to receive a benefit,' and were not likely to become eligible to receive a benefit, *at the time that they filed suit* ") [emphasis added].[43]

Defendants correctly contend, however, that "[n]either the *Harris* case, nor the cases cited therein, stand for the proposition that where a plaintiff files an amended complaint

---

Further the third cause of action, also singularly Perez's, asserts that he *earned* benefits during Plan year 1991 which would have been paid to him had he merely retired effective November 30, 1991, a holiday, rather than on November 27, the final work day of the Plan year. Arguably, Perez has a colorable claim to vested benefits under both the second and third causes of action and as such remains a "participant" within the statutory meaning of the term. As will be seen, the Court need not address this question.

**42.** Tr., at 9:7—10:10. Plaintiffs also contend that defendants "admitted" that plaintiffs are "participants" in initially answering the First Amended Complaint. Opposition Brief, at pp. 7–8. Defendants, however, timely amended their answer within 20 days, denying that plaintiffs are participants. *Compare* Joint Answer to First Amended Complaint, filed April 21, 1994, ¶¶ 3–5, *with* Joint First *Amended* Answer to Plaintiffs' First Amended Complaint, filed May 11, 1994, ¶¶ 3–5. "[P]rior pleadings cease to be conclusive judicial admissions, [although] they are admissible in a civil action as evidentiary admissions." *Contractor Utility Sales v. Certain–Teed Products,* 638 F.2d 1061, 1084 (7th Cir.1981). Here, the evidentiary value of the withdrawn admission is insufficient to overcome the undisputed objective evidence that plaintiffs are no longer "participants". Therefore, the withdrawn admission, while it would technically be admissible in the

event of a trial, *see, United States v. McKeon,* 738 F.2d 26, 31 (2d Cir.1984), nevertheless would not be credited by a reasonable trier of fact.

**43.** See also, *Morongo Band of Indians v. California State Bd. of Equalization,* 858 F.2d 1376, 1380 (9th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1989) ("In determining federal jurisdiction, *we look to the original, rather than to the amended, complaint.*") [action brought under Federal Interpleader Act, 28 U.S.C. § 1335; emphasis added]; *Winchester v. Pension Committee,* 942 F.2d 1190, 1194 (7th Cir.1991) (plaintiff "was not a plan participant *at the time the action was filed* and thus had no standing") [emphasis added]. But see, *Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1535 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993) (*"current* participant status is the relevant test") [emphasis added]; *Yancy v. American Petrofina, Inc.,* 768 F.2d 707, 708 (5th Cir.1985) ("[Q]uestions of standing must be resolved on the facts existing *when the challenge is raised.*") [emphasis added]. *Yancy,* an ERISA decision, cites *Safir v. Dole,* 718 F.2d 475, 481 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1206, 104 S.Ct. 2389, 81 L.Ed.2d 347, *reh. denied,* 467 U.S. 1268, 104, S.Ct. 3563, 82 L.Ed.2d 864 (1984) ("Standing, since it goes to the very power of the court to act, *must exist at all stages of the proceeding,* and *not merely when the action is initiated . . .*") [emphasis added].

which reveals that the court lacks subject matter jurisdiction over his claims, the plaintiff is nonetheless entitled to have jurisdiction based on the original, superseded complaint".[44] Defendants cite as being more closely on point a Fifth Circuit decision, *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058 (5th Cir.1984), *on petition for rehearing en banc*, 759 F.2d 504 (1985).

In *Boelens*, plaintiffs sued for breach of warranty under both Texas state law and the federal Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 et seq., which contains a predicate $50,000 amount-in-controversy requirement, and three other federal statutes. Plaintiffs amended their complaint to drop all the federal claims except the MMWA claim. The Fifth Circuit ruled, however, that plaintiffs had not satisfied the amount-in-controversy requirement for the MMWA and therefore that federal-question subject matter jurisdiction was lacking. 748 F.2d at 1063. Plaintiffs sought rehearing en banc, arguing that jurisdiction should have been determined by their original complaint, which included the three additional federal statutory claims. 759 F.2d at 506. A panel of the Fifth Circuit denied rehearing en banc, ruling that "because the burden is on the plaintiff to establish jurisdiction in the first instance, we conclude that the plaintiff must be held to the jurisdictional consequences of a voluntary abandonment of claims that would otherwise provide federal jurisdiction". *Id.*, at 508.

"Our conclusion that we must look to the amended complaint in assessing original federal jurisdiction is consistent with the general rule that an amended complaint ordinarily supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." · *Id.* (citations omitted).[45]

In this case, applying *Boelens, supra,* and evaluating subject matter jurisdiction by reference to the superseding amended complaint, there nevertheless remains federal common law jurisdiction for plaintiffs' claims pursuant to 28 U.S.C. § 1331. See, *Northeast Dept. ILGWU v. Teamster Local Union No. 229*, 764 F.2d 147 (3rd Cir.1984).

In *Northeast Dept. ILGWU*, one Ruth Fazio was a participant in the Northwest Department International Ladies' Garment Workers' Union ("ILGWU") employee benefit plan, and her husband was a participant in the Teamsters plan. 764 F.2d at 150. Mrs. Fazio underwent medical treatment and submitted her bills to the ILGWU fund, which advised her that she was ineligible because she was covered by the Teamsters fund. "Faced with one set of medical bills and two insurers who refused to pay, Mrs. Fazio filed suit in the United States District Court for the Middle District of Pennsylvania, naming both funds as defendants." *Id.*

"From the outset, it was clear that Mrs. Fazio was entitled to reimbursement from one of the funds. The district court thus

---

44. Defendants' Letter Brief, dated September 25, 1994, at p. 2. Note that at the hearing on the instant motions, defense counsel handed up a copy of the *Harris* decision, *supra,* and plaintiffs' counsel was given leave to submit a letter brief commenting on the decision. Tr., at 4:9 –5:15; 22:12–15. Plaintiffs' counsel submitted the authorized letter brief, dated September 17, 1994. In the meantime, on September 16, defense counsel filed a notice of supplemental authority, attaching a recent Ninth Circuit decision, *Friend v. Sanwa Bank*, 35 F.3d 466 (1994). Plaintiffs' counsel then felt compelled to respond to such unauthorized submission by letter brief dated September 21, which in turn prompted a letter brief from defense counsel dated September 25. For the record, all of these supplemental submissions have been read and considered by the Court.

45. Among the cases cited in *Boelens* was *Loux v. Rhay*, 375 F.2d 55 (9th Cir.1967), which merely

states that "[t]he amended complaint supersedes the original, the latter being treated as nonexistent", *id.*, at 57, without commenting on the jurisdictional implications such proposition. Yet, the Ninth Circuit has more recently stated that, "[i]n determining federal court *jurisdiction*, we look to the *original*, rather than to the *amended*, complaint." *Morongo Band of Indians, supra,* 858 F.2d at 1380 [emphasis added]. The *Morongo* court was aware of the *Boelens* decision and declared that "*Boelens* in no way conflicts with our [specific] ruling that a court is powerless to grant leave to amend when it lacks jurisdiction over the original complaint". *Id.*, at 1380 n. 2. The *Morongo Band of Indians* decision did not, however, address the specific holding in *Boelens* respecting cases where the original complaint supplies jurisdiction but the amended one arguably does not.

thought it unfair for Mrs. Fazio to incur counsel fees and to wait for payment while the court decided which of the funds was liable for her bills. The Court therefore suggested, and the defendants agreed, that (1) the ILGWU Fund would pay Mrs. Fazio's claim, (2) the action brought by Mrs. Fazio would then be dismissed, and (3) the ILGWU Fund would file, contemporaneously with the dismissal, a complaint in federal court against the Teamsters Fund seeking a declaration of the rights and obligations of the two funds regarding Mrs. Fazio and persons similarly situated." *Id.* The district court granted summary judgment for ILGWU. *Id.*, at 151 (citing district court's opinion, at 584 F.Supp. 68). The Teamsters appealed. Although both pension funds agreed that there was federal jurisdiction, the Third Circuit sua sponte requested supplemental briefing on the question. *Id.* The appeals court noted that "if Mrs. Fazio had remained a party to the action, the district court unquestionably could have exercised jurisdiction pursuant to [ERISA], 29 U.S.C. § 1132(a)(1)(B)." *Id.*, at 152. In her absence, however, the question was "much more problematic". *Id.* The Third Circuit rejected the parties' mutual argument that the trustees of one fund could "stand in the shoes" of an aggrieved beneficiary of another fund and sue on her behalf. *Id.* Accordingly, the Third Circuit held that jurisdiction over the suit could not be predicated under ERISA. *Id.*, at 153. Instead, the appeals court ruled, the case arose under federal *common law* and, as such, presented a federal question cognizable under the relevant jurisdictional statute, 28 U.S.C. § 1331.

*Id.*, at 159. "An action 'arises under' federal common law", the Third Circuit noted, "if, inter alia, plaintiff's requested relief requires the interpretation and application of federal judge-made law." *Id.*, at 157. Further, the Third Circuit observed that " 'Congress intended that federal courts create federal common law' " in interpreting ERISA. *Id.*, quoting *Franchise Tax Bd.*, *supra*, 463 U.S. at 25, 103 S.Ct. at 2855.[46] Thus, the court concluded, "there can be little doubt" that the lawsuit before it presented a question of federal common law. 764 F.2d at 157.

> "[F]inding jurisdiction in cases such as the one at bar ... would expand the scope of federal jurisdiction over ERISA-related actions only minimally because the vast majority of ERISA cases involving entitlement to benefits will fall under the express jurisdictional provisions of the statute. Indeed, the instant case would have been in federal court without question had not the district court, out of sympathy for Mrs. Fazio, suggested that the parties pay her and reinstitute the suit. For the odd case that does not fall under § 1132, a finding of federal jurisdiction promotes certainty and uniformity by having federal courts decide issues of federal common law."

*Id.*, at 159; see also, *Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576, 580 (7th Cir. 1991);[47] *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 988–991 (4th Cir.), cert. denied, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990); *Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1033 (3rd Cir.1988) (federal common law claim must be of "cen-

---

**46.** This interpretation of congressional intent also finds direct support in the Ninth Circuit: "Congress realized that the bare terms, however, detailed, of [ERISA] statutory provisions would not be sufficient to establish a comprehensive regulatory scheme. It accordingly empowered the courts to develop, in light of reason and experience, a body of *federal common law* governing employee benefit plans. First, it supplements that statutory scheme interstitially ... Second and more generally, it serves to ramify and develop the standards that the statute sets out in only general terms ... Third, Congress viewed ERISA as a grant of authority to the courts to develop principles governing areas of the law regulating employee benefit plans that had previously been the exclusive province of

state law." *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1499 (9th Cir.1984) (emphasis added).

**47.** In *Winstead*, Seventh Circuit Judge Richard Posner writes: "It is apparent that Congress, while it gave careful consideration to a vast number of issues that might arise in the administration of new federal pension law, overlooked a vast number of other issues ... For such omissions, which seem neither deliberate nor consistent with administering the statute sensibly in accordance with its overall goals and structure, section 1331 would provide a suitable [jurisdictional] remedy, as held in *Northeast Dept. ILGWU, [supra ]*". 933 F.2d at 580.

tral concern" to ERISA); *Whitworth Bros. Storage Co. v. Central States Pension Fund,* 794 F.2d 221, 236 (6th Cir.), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986).

■ The Third Circuit's decision in *Northeast Dept. ILGWU* is controlling in this case. Here, akin to Mrs. Fazio in *Northeast Dept. ILGWU,* it was "clear from the outset" that plaintiffs were entitled to receive vested benefit payments from defendants. 764 F.2d at 150. In both cases, there was a partial settlement of the claims involved. In *Northeast Dept. ILGWU,* at the district court's behest, one of two defendants paid Mrs. Fazio in consideration for dismissal of her action and then sued the other for indemnity. *Id.* In this case, defendants agreed to distribute stipulated amounts of vested benefits in consideration for being relieved of further accrued interest,[48] and plaintiffs amended their complaint accordingly. In both cases, all parties agreed that federal jurisdiction would be continuing notwithstanding the partial settlement. In the Third Circuit case, the agreement was implicit and honored even by the pension fund which brought the appeal. *Id.,* at 151. Here, plaintiffs negotiated for and received written assurance that their receipt of vested benefits was "without waiv[er] of their right to proceed against the defendants in this action" and that it "does not preclude them from seeking greater benefits which may be due".[49] In *Northeast Dept. ILGWU,* the district court "unquestionably could have exercised jurisdiction pursuant to [ERISA]" had Mrs. Fazio remained a party to the action. *Id.,* at 152. Similarly, here, had plaintiffs' claims to vested benefits remained outstanding, this Court's statutory jurisdiction under ERISA would be unquestioned because it is undisputed that at the time this lawsuit was filed (and continuing

until the distribution of benefits) plaintiffs were "participants" with standing to sue under ERISA. Finally, here as in *Northeast Dept. ILGWU,* the remaining claims at-issue require the interpretation and application of federal common law relating to ERISA. Like *Northeast Dept. ILGWU,* this is an "odd case" which does not fall under § 1132 but which is of "central concern" to ERISA and for which "a finding of federal jurisdiction promotes certainty and uniformity by having federal courts decide issues of federal common law". *Northeast Dept. ILGWU, supra,* 764 F.2d at 159; *Airco, supra,* 850 F.2d at 1033. Accordingly, this Court finds that plaintiffs' First Amended Complaint presents questions of federal common law for which subject matter jurisdiction exists under the federal question statute, Section 1331. See, *Northeast Dept. ILGWU, supra,* 764 F.2d at 155 ("the absence of an express statutory grant of jurisdiction under § 1132 of ERISA is … irrelevant, and this claim may be adjudicated in federal court pursuant to 28 U.S.C. § 1331(a)."). The Court thus turns to the substantive merits of plaintiffs' claims.

### C. *First Cause of Action*

The first cause of action alleges that defendants unlawfully amended the Plan to eliminate the immediate lump-sum payment of vested benefits upon an employee's termination in favor of an eighteen-month waiting period. Defendants contend that the claim is essentially one for breach of fiduciary duty and, because defendants' fiduciary obligations are owed merely to the Plan not individual beneficiaries, that plaintiffs have no valid cause of action.

#### 1. *breach of fiduciary duty claim*

Section 1132(a)(2) of ERISA permits a participant to pursue "appropriate relief" under Section 1109, which pertinently states:

---

48. *See* Grosboll Decl., Exhibit G (copy of joint case management conference statement, ¶ J).

49. Grosboll Decl., Exhibit G (copy of joint management conference statement, ¶ J). Defendants seek to renege on this condition of the partial settlement, arguing that lack of subject matter jurisdiction cannot be waived. Defendants' Reply Brief, at p. 3, citing *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1194 n. 2 (9th Cir.1988) ("It is elementary that the subject matter jurisdiction of the district court is not a waivable matter and

may be raised at anytime by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the trial or reviewing court."). See also, *Morongo Band of Indians, supra,* 858 F.2d at 1380 ("The parties have no power to confer jurisdiction on the district court by agreement or consent."). Defendants misconstrue their agreement as purportedly "conferring" jurisdiction. Instead, the parties' agreement merely reflects recognition of the outstanding issues of federal common law which remain to be decided.

"Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries ... shall be personally liable to make good *to such plan* any losses to the plan resulting from such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary ..."

29 U.S.C. § 1109(a) (emphasis added). "There can be no disagreement ... that § [1132(a)(2) ] authorizes a [participant or] beneficiary to bring an action against a fiduciary who has violated § [1109].... [H]owever, that recovery for a violation of § [1109] *inures to the benefit of the plan as a whole*.... [¶] A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of the plan assets, and with remedies that would protect *the entire plan,* rather than with the rights of an individual beneficiary.... [¶] And the entire text of § [1109] persuades us that Congress did not intend that section to authorize any relief *except for the plan itself." Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 139–43, 105 S.Ct. 3085, 3089–91, 87 L.Ed.2d 96 (1985) [emphasis added]; see also, *Mertens v. Kaiser Steel Retirement Plan,* 744 F.Supp. 917, 920 (N.D.Cal.1990) (Patel, J.), *aff'd,* 948 F.2d 1105 (9th Cir.1991) ("a civil action alleging a fiduciary's liability under ERISA section [1109] ... must be brought on behalf of the benefit plan, since no individual relief is available"). Plaintiffs contend, however, that their first cause of action is otherwise authorized under sections 1132(a)(1)(B).[50]

### 2. *breach of contract claim*

Section 1132(a)(1)(B) permits a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan". 29 U.S.C. § 1132(a)(1)(B). Essentially, subsection (a)(1)(B) allows an action in the form of breach of contract, the contractual instrument being the pension plan.

Plaintiffs contend that the amendment of the Plan violated the terms of Section 1.4(A) thereof, which pertinently provides:

"(1) The Plan sponsor reserves the right to amend any part of the Plan at any time.... No amendment to the Plan shall decrease the Accrued Benefit of any Participant.... [¶] (2) No amendment to the Plan ... shall be effective to the extent that it has the effect of decreasing a Participant's Accrued Benefit.... For purposes of this paragraph, a Plan amendment which has the effect of ... (b) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment, shall be treated as reducing Accrued Benefits...."[51]

In construing Section 1.4(A) of the Plan, plaintiffs suggest that ERISA's language and legislative history are a useful guide. Under ERISA, as under the terms of the Plan in this case, "[t]he accrued benefit of a participant ... may not be decreased by an amendment of the plan ...". 29 U.S.C. § 1054(g).

"The committee expects that the regulations will not permit the elimination of a 'lump-sum distribution' option because, for a participant or beneficiary with substandard mortality, the elimination of the option could eliminate a valuable right ..."

S.Rep. No. 575, 98th Cong. (1984), *reprinted in* U.S.Code Cong. & Admin.News 2547, 2576.

Defendants urge, however, that they did not "amend" the Plan, but instead adopted a "policy change".[52] As defendants observe,

---

50. Opposition Brief, at pp. 8–9.

51. P. Bruno Decl., ¶ 13 and Exhibit A (copy of Plan, at ¶ 1.4(A)).

52. Defendants' Brief, at pp. 10–14, citing P. Bruno Decl., Exhibit C (copy of Attachment A to Plan, at ¶ 2) ["Payment of profit sharing funds due upon termination of the participant shall be made five (5) years after termination ... The above policy change[ ] ha[s] been deemed to be in keeping with the original intent of the profit sharing plan by the Plan Administrators."]. Note that the version of Attachment A submitted in evidence is the original one adopting a five-year waiting period instead of the eighteen-month period currently in force (under which defendants implausibly assert that benefits were actually distributed). *See* Footnotes 29–32 and accompanying text hereinabove. Since plaintiffs

the Ninth Circuit has "h[e]ld that the modification of [a] lump-sum distribution policy d[oes] not rise to the level of a plan amendment". *Oster v. Barco of California Employees' Retirement Plan,* 859 F.2d 1345, 1351 (9th Cir.1988).

"*Oster* involved an action by a beneficiary of a defined benefit plan whose request for a lump sum payout was denied by the plan trustees in the exercise of their discretion and via the retroactive application of a new policy under which terminating employees entitled to $3,500 or more, would not, as a general rule, be paid in a lump sum.... [¶] In *Oster,* the trustees adopted a policy which applied to a provision already a part of the pension plan. *[T]he adoption of that policy did not result in the reduction of plaintiff's benefits, just a delay in their payment."* *Criscenti v. Bradco Profit Sharing Investment Plan,* 698 F.Supp. 1486, 1492–93 (S.D.Cal.1988) (explaining and applying *Oster* ) [emphasis added].[53]

■ This case is likely distinguishable from *Oster* in that, unlike *Oster,* this appears to be a case in which the policy change has resulted in participants "suffering a reduction in benefits". *See* 859 F.2d at 1348. In *Oster,* the present-value lump-sum benefit was converted into an "actuarially equivalent" annuity. *Id.* Here, the lump-sum benefit is simply deferred. Basic economics suggests that unless accrued interest is paid over the period of the deferral there is no *actuarial equivalency* and, distribution of benefits deferred becomes distribution of benefits partially denied. It is a material question for the trier-of-fact whether this is what has actually happened in this case (al-

though it appears more likely than not since recovery of interest accrued over the deferral period is precisely what plaintiffs have sued for). Thus, the instant case, depending on facts to be adduced, is not necessarily governed by the *Oster* doctrine, and defendants are not as a matter of law entitled to judgment on plaintiffs' first cause of action.

Accordingly, defendants' motion for summary adjudication with respect to the first cause of action is denied.

### D. *Second Cause of Action*

The second cause of action alleges that defendants breached their fiduciary duties by failing to collect, credit and properly allocate pension contributions for work plaintiff Perez performed on MPE's public works contracts. "Instead, a portion of the funds which MPE contributed for Perez's work were [sic] allocated to the profit sharing accounts of other employees, including defendant Bruno, his family members and other MPE personnel".[54]

Again, defendants argue that because this cause of action is one for breach of fiduciary duty, under the Supreme Court's ruling in *Russell, supra,* 473 U.S. at 139–43, 105 S.Ct. at 3089–91, an individual plan participant such as Perez has no right of action.[55]

Yet, "mechanically applied to the present case, *Russell* is not dispositive". *Sokol v. Bernstein,* 803 F.2d 532, 534 (9th Cir.1986). The *Russell* decision is "without controlling significance beyond the question of relief under § [1109]". *Russell, supra,* 473 U.S. at 151, 105 S.Ct. at 3095 (Brennan J., concurring) ["writ[ing] separately ... to emphasize the issues left open by today's decision"]; *see*

---

have not urged otherwise, the Court assumes that the language of Attachment A currently in force is identical in all respects except the length of the waiting period.

**53.** In *Oster,* "the policy change was based on the recommendation of an actuary that the routine lump-sum distribution policy should be so modified ... to make the plan more of a retirement program rather than a severance pay program.... [¶] [W]e note that this is not a case in which the complaining beneficiary is suffering a reduction in benefits. Whether Oster received his benefits in the form of an annuity or a lump-sum distribution, the amount paid to him would

be *actuarially equivalent."* *Oster, supra,* 859 F.2d at 1347, 1348 (emphasis added).

**54.** First Amended Complaint, ¶ 33. Perez alleges that defendants breached their fiduciary duties by violating the federal Davis–Bacon Act, 40 U.S.C. § 276a et seq. and Anti–Kickback Act, 41 U.S.C. § 51 et seq., as well as California Labor Code § 1720 et seq. Perez's theory, seemingly, is that these statutes supply the standard of care for evaluating the fiduciary duties imposed under ERISA.

**55.** *See* Defendants Brief, at p. 14; Reply Brief, at p. 8.

*id.*, at 137 n. 5, 105 S.Ct. at 3088 n. 5 (majority opinion) [Because respondent relies entirely on § [1109(a) ] ... we have no occasion to consider whether any other provision of ERISA authorizes recovery of "extracontractual damages"]. Justice Brennan has advanced the notion that, notwithstanding the judgment in *Russell* (in which he concurred), a private extracontractual damage remedy for breach of fiduciary duty may constitute " 'appropriate equitable relief' " allowed for under Section 1132(a)(3). 473 U.S. at 151–56, 105 S.Ct. at 3095–3098 (Brennan J., concurring).

> "The legislative history demonstrates that Congress intended by § [1104(a) ] to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running *directly* to beneficiaries in the administration and payment of trust benefits."

*Id.*, at 151–52, 105 S.Ct. at 3095–96 (emphasis added). Justice Brennan also declared:

> "Trust-law remedies are equitable in nature, and include the provision of monetary damages ... Thus, while a given form of monetary relief may be unavailable under ERISA for other reasons ... it cannot be withheld simply because a beneficiary's remedies under ERISA are denominated 'equitable.' "

*Id.*, at 152 n. 10, 105 S.Ct. at 3096 n. 10.

At least one federal circuit has responded to Justice Brennan's clarion call to action: "We believe Justice Brennan's conclusion is correct that under the law of trusts, a beneficiary is entitled to a remedy that will put him in the position he would have been in if the fiduciary had not committed a breach of trust, and that such a remedy includes monetary damages." *Warren v. Society Nat. Bank,* 905 F.2d 975, 982 (6th Cir.), *rehearing en banc denied,* 1990 U.S.App. LEXIS 16686 (1990), *cert. denied,* 500 U.S. 952, 111 S.Ct.

2256, 114 L.Ed.2d 709 (1991). The Ninth Circuit, however, has rejected this view:

> "Whether extracontractual and punitive damages are available under section 1132(a)(3) for 'other appropriate relief' was expressly reserved by the Court. [*Russell* ], [473 U.S. at 137, n. 5,] 105 S.Ct. at 3088, n. 5. Despite the reservation, the Court reasoned that the civil enforcement provisions found in section 1132(a) were exclusive and in broad language suggested fiduciaries cannot be held personally liable to beneficiaries for extracontractual damages. *Id.,* at [145–47, 105 S.Ct. at] 3092–93. The reasoning of the [Supreme] Court [majority] suggests that *extracontractual damages should be unavailable under section 1132(a)(3) as well.*"

*Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1306–07 (9th Cir.1986) (emphasis added); accord, *Sokol, supra,* 803 F.2d at 536 ("the logic of *Russell* forecloses the availability of extracontractual damages under § [1132](a)(3)"); *Williams v. Caterpillar, Inc.,* 944 F.2d 658, 665 (9th Cir.), *amended,* 91 C.D.O.S. 8863, *reported in full,* 1991 U.S.App. LEXIS 2607 (1991).[56]

■ Accordingly, because the Ninth Circuit has determined that a plan participant has no right of action for breach of a fiduciary duty, defendants are entitled to summary adjudication of the second cause of action of the First Amended Complaint.

### E. Third Cause of Action

■ The third cause of action, denoted "for breach of fiduciary duty and loss of benefits", alleges that no contributions were made to the Plan on behalf of Perez for Plan year 1991 because he terminated his employment on November 27, 1991, the last *working* day of the Plan year, instead of three days later, on November 30, 1991, the very last

---

56. See also, *Amos v. Blue Cross–Blue Shield of Alabama,* 868 F.2d 430, 431 (11th Cir.), *rehearing en banc denied,* 875 F.2d 874, *cert. denied,* 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989); *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 824 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Powell v. Chesapeake and Potomac Tel. Co.,* 780 F.2d 419, 424 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) ("The

provision for 'other appropriate equitable relief', whatever it embraces, cannot be held to authorize extracontractual or punitive damages for the breach of a plan administrator's fiduciary duties under ERISA."); *Warren, supra,* 905 F.2d at 984 (Wellford J., dissenting) ("I would take the opinion of the majority in *Russell,* even if dicta, as setting a proper guide to follow rather than Justice Brennan's separate opinion which speaks for a minority of the Court.").

day of the Plan year. The crux of the claim is as follows:

"Defendants failed to furnish plaintiff Perez with the Plan's Summary Plan Description (SPD). As a direct result of defendants' failure to distribute an SPD to plaintiff Perez, Perez was unaware of the Plan's requirement that he be employed as of the end of the plan year to be eligible for a contribution for that year. Had he received an SPD and thereby been informed of the Plan's requirements, plaintiff Perez would not have terminated his employment on November 27, 1991, but would have delayed his termination effective three non-working days later. [¶] Defendants *breached their fiduciary duty to Perez* under ERISA and the Plan by failing to distribute to him a copy of the Plan's SPD, and by subsequently failing to make a contribution to the Plan on his behalf for 1991." [57]

In opposition to the instant motion, however, Perez appears to re-characterize his claim, arguing that "[d]efendants *violated the Plan* and ERISA when MPE failed to make a contribution on Perez's behalf for the 1990–1991 Plan Year". [58]

It is settled that Perez is legally disabled from claiming a breach of fiduciary duty. *Hancock, supra,* 787 F.2d at 1306–07. The Court therefore construes his allegations as stating a claim for breach of the terms of the Plan pursuant to Section 1132(a)(1)(B) and examines such terms to determine whether the undisputed facts support summary adjudication in favor of defendants.

Defendants argue that "[t]he undisputed facts show that, at the time of plaintiff Perez's termination, the Plan *expressly* provided that participants who were not employed by MPE *on November 30* of a particular year were not entitled to an allocation for the preceding Plan Year". [59] They cite to § 10.1 of the Plan's adoption agreement, which provides:

"The Employer shall not make a contribution on behalf of a participant who terminated employment with the Employer and is not employed with the Employer on the Anniversary Date. [60]

The "Anniversary Date" does not appear to be defined in the adoption agreement. However, the Plan itself prescribes that the term, " 'Anniversary Date' " shall mean the last day of the Plan Year." [61]

Section 10.1 of the adoption agreement cannot carry the day because, even construed in conjunction with the entire Plan, it is ambiguous. Certainly, the Plan itself does not ascribe any magical significance to the date November 30. Thus, the "express" terms are not inconsistent with Perez's apparent understanding that the term Anniversary Date refers to the last *working* day of the Plan year, in this case, November 27, 1991. It is undisputed that MPE was closed on November 28 (Thanksgiving Day), Friday November 29 and Saturday, November 30, 1991, [62] and Perez plausibly argues that "[e]ven if [he] had wanted to terminate on November 28, 29 or 30, he could not have". [63] The Court concludes that there are genuinely disputed material issues of fact as to the meaning of the pertinent terms of the Plan. [64]

**57.** First Amended Complaint, ¶ 39 (emphasis added).

**58.** Opposition Brief, at p. 19.

**59.** Reply Brief, at p. 14 (emphasis added).

**60.** *See* P. Bruno Decl., ¶ 14 and Exhibit B (copy of Plan adoption agreement, at § 10.1).

**61.** *Id.,* ¶ 13 and Exhibit A (copy of Plan, at ¶ 2.6).

**62.** *See* Grosboll Decl., ¶ 6 and Exhibit A (B. Bruno Depo. Tr., at 108:1—110:15; 113:17–23).

**63.** Opposition Brief, at p. 20.

**64.** The summary plan description (SPD), which summarizes but is not actually part of the Plan, contains greater specificity than the Plan. *See* Grosboll Decl., ¶ 11 and Exhibit F (copy of SPD). The SPD states: "The vesting schedule is based on covered years of service. A covered year of service is any 12 month period *ending on November 30th* during which you worked for the employer at least 1000 hours." *Id.* (SPD, at p. 6) [emphasis added]. Also: "Once you have become a participant in the Plan, you will remain a participant until a year (which *ends on November 30th* ) passes, during which you did not work 500 hours." *Id.* (SPD, at p. 7) [*emphasis added*]. The SPD is plainly substantial, although not conclusive, parol evidence of the meaning of the Plan terms. However, defendants do not dispute Perez's attestation that he never received a copy of the SPD, as required under 29 U.S.C. § 1024(b)(1). *See* Perez Decl., ¶ 4. Accordingly,

Accordingly, defendants' motion for summary adjudication of the third cause of action of the First Amended Complaint is denied.

### F. Fourth Cause of Action

The fourth and final cause of action alleges that, prior to initiating the lawsuit, plaintiffs Nunez and Perez requested certain documents and other information from defendants relating to their claims for benefits, but that defendants refused to satisfy some of the requests, purportedly in violation of ERISA and its associated regulations.[65] They seek "assess[ment of] a reasonable fine for failing to furnish documents".[66] Defendants argue in support of their motion that "plaintiffs were provided with all the documents to which they were legally entitled".[67]

ERISA pertinently provides:

"Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant ... by mailing the material requested ... within 30 days after such request may *in the court's discretion* be personally liable to such participant ... in the amount of up to $100 per day from the date of such failure or refusal, and the court may *in its discretion* order such other relief as it deems proper."

29 U.S.C. § 1132(c)(1)(B) (emphasis added). ERISA contains explicit disclosure requirements that obligate a plan administrator to furnish a participant, upon written request, with "the *latest* updated summary plan description", "the *latest* annual report" of a plan's assets, liabilities, receipts, and disbursements, and the documents under which the plan was established. 29 U.S.C. § 1024(b)(4) (emphasis added). Also, upon written request, the administrator must supply a participant with a statement of the latter's total accrued benefits and total accrued nonforfeitable pension benefits. *Id.,* § 1025(a).

Plaintiffs effectively concede that they have received all documents which ERISA explicitly requires be produced.[68] The Ninth Circuit has ruled, though, that these explicit disclosure requirements are *not* necessarily exhaustive.

"[A]n ERISA fiduciary's duty to disclose information to beneficiaries [or participants] is not limited to the dissemination of the documents and notices specified in [ERISA], but may *in some circumstances* extend to additional disclosures where the interests of the beneficiaries [or participants] so require. However, common law trust duties regarding the disclosure of information to beneficiaries [or participants] may be read into ERISA ... only to the extent that they relate to the provision of benefits or the defrayment of expenses, and only insofar as they do not contradict or supplant the existing reporting and disclosure provisions."

*Acosta v. Pacific Enterprises,* 950 F.2d 611, 618–19 (9th Cir.1991), *amended on rehear-*

---

defendants may perhaps be estopped from introducing the SPD into evidence at trial. *See* 29 U.S.C. § 1132(a)(3) (permitting participants appropriate *equitable* relief). The Court reserves this question.

**65.** *See* Footnotes 14–16 and accompanying text hereinabove (discussing pertinent allegations in First Amended Complaint); *see also* Footnotes 36–39 and accompanying text hereinabove (discussing undisputed facts relating to the requests for documents).

**66.** *Id.,* Prayer for Relief, ¶ 8.

**67.** Defendants' Brief, at p. 20. Alternatively, they urge that liability, if any, may only be imposed on a "plan administrator"—in this case, MPE—, and therefore that defendants Bruno and Monterey Peninsula Engineering Profit Sharing Plan are immune from liability. *Id.,* at p. 25. The Court finds that the fourth cause of action can be adjudicated without reaching this question.

**68.** *See* Defendants' Separate Statement of Undisputed Material Facts, etc., ¶ 22 (at p. 7) ("Defendant MPE responded to plaintiffs' [written] request by providing [plaintiffs' counsel] with ... (a) a copy of the then-current summary plan description; (b) a copy of a SPD in existence prior to the then current SPD; (c) a copy [sic] of the annual reports completed by the Plan during the years 1988–1991; (d) a copy of the then-current Plan; (e) a copy of the then-current Adoption Agreement; and (f) a copy of the then-current Investment Plan."); *see also* Plaintiffs' Separate Statement of Disputed Facts, etc., at p. 6 ("Defendants only furnished documents and information listed on [their separate] Statement of Facts (page 7).").

*ing,* 1992 U.S.App. LEXIS 639 (1992) (emphasis added).

It is unnecessary to determine whether this is one of those circumstances alluded to in *Acosta, supra,* in which additional disclosures should have been made because, in exercise of its discretion pursuant to 29 U.S.C. § 1132(c)(1)(B), this Court finds that no financial penalties for non-disclosure are warranted in this case. "An employer's procedural violations of ERISA entitle employees to monetary relief only in exceptional cases. Most courts that have considered the issue have held that the employer must have acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their employees ... before recovery for procedural violations is warranted." *Kreutzer v. A.O. Smith Corp.,* 951 F.2d 739, 743 (7th Cir. 1991), *rehearing en banc denied,* 1992 U.S.App. LEXIS 2092 (1992). Here, there is no allegation or evidence that defendants acted in bad faith; indeed, MPE produced all documents explicitly called for under ERISA. Compare, *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1353–54 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). Nor is there any allegation or evidence that plaintiffs have been prejudiced by the non-disclosures. The documents were apparently requested in anticipation of this lawsuit in an effort to conduct informal, pre-litigation discovery. Plaintiffs are not harmed by having to request the same documents by means of formal discovery *during* the ordinary course of this litigation. The Court rules in exercise of its discretion that defendants are entitled to judgment as a matter of law on plaintiffs' fourth cause of action.

### III. *ORDER*

Accordingly, IT IS HEREBY ORDERED that:

(1) Defendants' motion for summary adjudication of the first and third causes of action of the First Amended Complaint is DENIED; and

(2) Defendants' motion for summary adjudication of the second and fourth causes of action of the First Amended Complaint is GRANTED.

SO ORDERED.